United States District Court
Southern District of Ohio

| | | |
|---|---|---|
| Denise Jackson<br>3311 Sumac Terrace<br>Cincinnati, Ohio 45239<br><br>    Plaintiff,<br><br>VS.<br><br>Wal-Mart, Inc.<br>702 S.W. Eighth St<br>Bentonville, Arkansas 72716<br><br>Wal-Mart Stores East, LP<br>Statutory Agent: CT Corporation System<br>4400 Easton Commons Way<br>Columbus, Ohio 43219<br><br>Wal-Mart Associates, Inc.<br>Statutory Agent: CT Corporation System<br>4400 Easton Commons Way<br>Columbus, Ohio 43219<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. _____<br><br>Judge _____<br><br><br><br>**COMPLAINT**<br><br><br><br><br><br><br><br><br>**JURY DEMAND**<br>**ENDORSED HEREIN** |

## I.    Recitals-Jurisdiction-Parties

1. This is an action under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e et seq.), the Age Discrimination in Employment Act of 1967 (29 U.S.C. §621, et seq.), and other provisions of the Federal and State law to correct unlawful employment practices on the basis of age, gender, race, color, retaliation, and related employment rights and to make whole Plaintiff Denise Jackson.
2. Plaintiff (hereinafter also referred to as "Denise Jackson," "Denise," "Ms. Jackson," or "Plaintiff") also claims wrongful discharge in violation of public policy under common law.
3. Denise Jackson was an employee of Wal-Mart, at their store located in 10240 Colerain Ave., Cincinnati, Ohio 45251, full-time with benefits from approximately March of 2000 until March of 2017.
4. The Defendant is Wal-Mart Stores, Inc., incorporated in the state of Delaware, with address of principal executive office at 702 S.W. Eighth St., Bentonville, Arkansas 72716 with store located at 10240 Colerain Ave., Cincinnati, Ohio 45251, and with multiple Ohio Filings of such filings:

Ohio Foreign Limited Partnership Filing as Wal-Mart Stores East, LP, with statutory agent CT Corporation System 4400 Easton Commons Way, Columbus, Ohio 43219 and Ohio Foreign Corporation Filing as Wal-Mart Associates, Inc. with statutory agent CT Corporation System 4400 Easton Commons Way, Columbus, Ohio 43219 acting through its agents and employees (Hereinafter "Wal-Mart" or "Defendant").

5. On March 17, 2017 Defendant terminated the employment of Plaintiff.
6. Defendant improperly discharged the Plaintiff.
7. Defendant engaged in unlawful employment practices under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq., and 42 U.S.C. §1981a, and the Age Discrimination in Employment Act, 29 USC §621, et seq., and in violation of public policy.
8. The persons implementing the unlawful practices on behalf of Defendant were agents of the Defendant.
9. At all relevant times Defendant has continuously been engaged in an industry affecting commerce within the meaning of 42 U.S.C.A. § 2000e (b), (g), and (h).
10. This court has jurisdiction over the legal actions alleged herein for the reasons that all the parties reside within or conducted activity within the United States District Court for the Southern District of Ohio, Western Division, and all the action complained of occurred within the jurisdiction of the United States District Court for the Southern District of Ohio, Western Division.
11. This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, The Rehabilitation Act, 29 U.S.C. §701 et seq., the Age Discrimination in Employment Act 29, USC §621, et seq, 28 U.S.C. § 1331, and 28 U.S.C. §1343.
12. Venue is proper under in this judicial district under 28 U.S.C. §1391 (b) and (c) as Plaintiff was employed by Defendant at a Defendant's store located within this judicial district, Plaintiff's employment records are maintained by a Defendant's store located within this judicial district, and decisions adverse to Plaintiff's employment that are the subject of this civil action were made in this judicial district.
13. A charge was filed with the Equal Employment Opportunity Commission (hereinafter "EEOC") by Plaintiff.
14. The notice of right to sue was issued by the EEOC.
15. The Defendant has further engaged in age discrimination under the Age Discrimination in Employment Act (hereinafter "ADEA") as provided under 29 U.S.C. §626 *et seq*.
16. Defendant has more than 20 employees and is obligated to follow the provisions of ADEA and Title VII of the Civil Rights Act of 1964 and not engage in retaliatory practices.
17. Defendant, Defendant's agents, and Defendant's employees are all required to follow the provisions of the United States Code as detailed in the ADEA and Title VII and not engage in protected retaliatory practices.
18. The Defendant has further violated Ohio's Labor protections under Ohio Revised Code Title 41.
19. Jurisdiction of this court is proper for the claim under the Ohio Revised Code for labors protection and any other state law claim pursuant to 28 U.S.C.A. §1367 as the state law claims for labor protection and any other state law claim arises under the same case or controversy.

## II. Facts

20. Plaintiff re-alleges paragraphs 1 through 19 the same as if fully rewritten herein.
21. Plaintiff is fifty-five (55) years old.
22. Plaintiff is a black African American.
23. Plaintiff is female.
24. The Plaintiff was hired by Defendant on or around March of 2000, she was hired as a Department manager at a rate of pay of around $8.00 an hour.
25. Around three years prior to termination, Plaintiff was made the Personnel Manager at the store she worked at and made around $21.00 an hour. Approximately 6 months into that position, the position of Personnel Manager was given to Gwen Jennings.
26. After this, Plaintiff was given the position of Training Coordinator and had to take a pay cut and on the date of termination was making around $17.75 an hour. Prior to termination, Plaintiff was scheduled to receive a raise in pay in the immediately subsequent weeks. Plaintiff was full time and on a typical work week Plaintiff worked 40 hours per week.
27. Defendant issued Plaintiff a personnel policy and procedure manual also known as employee manual at or around the time of being hired.
28. Defendant's employee manual includes a section setting forth its discipline policy and reasons for discipline.
29. Prior to the incident that Ms. Jackson was wrongfully terminated for, Ms. Jackson was never disciplined, had a good attendance record, and was considered a model employee by her superiors. While employed by Defendant, Ms. Jackson's performance evaluations were exceptional.
30. Plaintiff is currently working part time for US Bank and Western & Southern Financial Group.
31. On or around January 14, 2017, various associates asked Ms. Jackson and Gwen Jennings (H.R. Personnel Manager) if the employees could have their permission to take up a collection for the store manager, Brad Terry, for a baby shower gift. This was subsequently approved.
32. Gwen Jennings (hereinafter referred to as "Gwen") went to Rebecca Greene, the department manager for infants, to discuss appropriate gifts for Brad Terry's family and his new baby.
33. On or about January 16, 2017, Rebecca Greene had collected approximately $48.00. The $48.00 was delivered to Ms. Jackson.
34. The $48.00, which was collected, was placed in a locked cabinet in the office, an area used by Ms. Jackson and others, by Ms. Jackson.
35. On January or around January 16, 2017, Rebecca Greene had picked out approximately $78.00, in gifts. The gifts consisted of a Fisher Price ultra-lite day and night play yard and other smaller miscellaneous gifts for a newborn baby.
36. Rebecca Greene placed the gifts in the office on a cart on or about January 16, 2017.
37. Because the items selected by Rebecca Greene added up to approximately $78.00, there was a shortage of approximately $30.00, which the employees believed would be collected in the ensuing days.
38. Because of some family emergency matters, Brad Terry was given the gifts being held in the office on or around January 17, 2017. The gifts were initially delivered to him in the hall and eventually the employees and Brad Terry went to the break room around 10:00 AM for a brief

gift presentation and team meeting. Sometime after this, Brad Terry left the store with the gifts and retained them thereafter.

39. Ms. Jackson is not sure where Brad Terry stored the gifts before he left work that day, but she believes that Brad put the items in his office.
40. On or about January 17, 2017, the UPC (bar codes), for the items in the office, were placed in the locked cabinet with the $48.00 that had been collected.
41. On or about January 17, 2017, Terry Robinson, a department manager, witnessed Ms. Jackson place the bar codes into the file cabinet and place them next to the money that was still present at that time.
42. On or about January 18, 2017, Ms. Jackson collected additional funds in the approximate sum of $34. Ms. Jackson added this to the original cash collected which resulted in a total collection of approximately $82.00.
43. Ms. Jackson, on or about January 18, 2017, went to the locked file cabinet to remove the money and barcodes. It was her mission at that time to take the barcodes with the money to a cashier and pay for the items that were being stored.
44. Ms. Jackson, on or about January 18, 2017, went to the locked filing cabinet in the office to secure the money and the barcodes to a cashier and noticed, at that time, that the barcodes were missing.
45. The money that was being stored to pay for the gifts was in a clear Ziploc sandwich type bag and was still present in the filing cabinet on or about January 18, 2017.
46. Ms. Jackson alerted Gwen that the barcodes were missing and Gwen asked Rebecca Greene if she would try to obtain a second set. Gwen stated that Rebecca Greene would be the obvious person to obtain the barcodes since she worked in the infant department.
47. Gwen and Ms. Jackson, knowing that they needed the barcodes for a cashier, went online to Walmart.com. Gwen also telephoned Wal-Mart store 1521 to see if they could provide the necessary barcodes and spoke to Eleanor Martinez.
48. On or about January 20, 2017, Eleanor Martinez informed Ms. Jackson that she was not able to obtain the barcodes.
49. Ms. Jackson, unable to obtain replacement barcodes, asked Gwen what should be done. Gwen informed Ms. Jackson not to worry and that she would get the replacement bar codes.
50. On or about March 3, 2017, the District Loss Prevention Officer, Wes, confronted Ms. Jackson in regards to the money collected for the baby gifts and asked her if she took the money or borrowed the money. Ms. Jackson unequivocally told him that she had neither taken the money nor did she borrow the money.
51. On or about March 3, 2017, Ms. Jackson took Wes to the file cabinet and showed him that the money collected was still present.
52. On or about March 17, 2017, Ms. Jackson's employment was terminated. Beth, a store manager from the Wal-Mart Hamilton Store, and Wes, terminated Ms. Jackson's employment.
53. Upon termination, Ms. Jackson was asked by Wal-Mart to return the Wal-Mart vest, badge and any keys that she possessed o Wal-Mart; which she did on or around March 17, 2017.
54. Ms. Jackson was denied access to discuss the matter with Wal-Mart employees. Ms. Jackson did receive an email from Terry Robison.

55. Prior to this incident, Ms. Jackson had an exemplary work record, attendance record, always had positive and good evaluations and was frequently noted for going above and beyond the requirements of Wal-Mart.
56. Gwen, had the same access and responsibility as Ms. Jackson as it pertained to the collection and storing of the collected money. To Ms. Jackson's knowledge, Gwen was not terminated nor was she disciplined. Gwen had a contentious work relationship with Ms. Jackson.
57. To Ms. Jackson's knowledge, Brad Terry, who received the merchandise, left the store without a receipt and was not terminated nor disciplined for his involvement.
58. To Ms. Jackson's knowledge, Rebecca Greene, who also collected the money and stored the gifts in the office, was not terminated nor disciplined for her involvement.
59. To Ms. Jackson's knowledge, no other individuals were disciplined as a result of the events that occurred. Similar or worse events occurred at the same Wal-Mart store or other Wal-Mart stores that were close by. The individuals involved in those events received considerably better treatment than Ms. Jackson as they received less discipline or no discipline as a result of their actions.
60. It is unclear what action Wes performed in his investigation or which individuals Wes interviewed as part of his investigation.
61. Ms. Jackson was never provided with any report, investigative notes or other information that anyone ever looked into the locked cabinet in the office to verify that the money was still present or that it had every left the cabinet.
62. An exit interview was performed at or around Ms. Jackson's date of termination. The exit interview lists gross misconduct-integrity issues as the reason for termination. It also states that Ms. Jackson is not eligible to be rehired.
63. The exit interview states that Ms. Jackson was found to have violated the Wal-Mart associate purchase policy in case control procedures for associate funds and states Merchandise in the amount of $93.12 was "understocked" in the personnel office and not paid for. Ms. Jackson was not the recipient of the merchandise.
64. Wal-Mart failed to show that the collected funds were ever removed by Ms. Jackson or that Ms. Jackson violated any policy. The merchandise at issue was not removed nor stored by Ms. Jackson.
65. Brad Terry is white, Caucasian, and male.
66. Wes is white, Caucasian, and male.

### III. Causes of Action

A. **Racial Discrimination in Violation of Title VII**

67. Plaintiff re-alleges paragraphs 1 through 66 the same as if fully rewritten herein.
68. The Defendant's conduct as alleged herein constitutes discrimination based on race in violation of Title VII, 42 USC §2000e et seq.
69. Plaintiff's race and/or color, black African American, was a motivating factor in the decision of Defendant to terminate Plaintiff's employment.

70. Plaintiff's race and/or color, black African American, was a motivating factor for Defendant behind how Ms. Jackson was disciplined by Defendant and for when Defendant lowered the Wage of Plaintiff.
71. Plaintiff was at all times and is still qualified for her position with the Defendant.
72. Individuals that did not share Ms. Jackson's race received different treatment and discipline from Defendant than Ms. Jackson for similar or worse conduct than Ms. Jackson.
73. The effect of the practices performed by the Defendant complained of herein have deprived the Plaintiff of equal employment opportunities and otherwise adversely affects her status as an employee because of her race and/or color.
74. The state reasons for the Defendant's conduct were not the true reasons, but instead were a pretext to hide the Defendant's discriminatory animus towards Ms. Jackson based partly on her race and/or color.
75. Plaintiff has been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, and loss of wages and benefits, as the direct and proximate result of respondent's violation of her civil rights as alleged herein. Plaintiff is reasonably certain to continue to suffer these damages in the future. Plaintiff is entitled to rights and remedies at law provided by Title VII including actual damages, compensatory damages, punitive damages, and attorney's fees.

**B.    Sex Discrimination in violation of Title VII**

76. Plaintiff re-alleges paragraphs 1 through 75 the same as if fully rewritten herein.
77. The Defendant's conduct as alleged herein constitutes discrimination based on sex in violation of Title VII, 42 U.S.C. § 2000e et seq.
78. Plaintiff's sex, female, was a motivating factor in the decision of Defendant to terminate Plaintiff's employment.
79. Plaintiff's sex, female, was a motivating factor for Defendant behind how Ms. Jackson was disciplined by Defendant and for when Defendant lowered the Wage of Plaintiff.
80. Plaintiff was at all times and is still qualified for her position with the Defendant.
81. Individuals that did not share Ms. Jackson's sex received different treatment and discipline from Defendant than Ms. Jackson for similar or worse conduct than Ms. Jackson.
82. The effect of the practices performed by the Defendant complained of herein have deprived the Plaintiff of equal employment opportunities and otherwise adversely affects her status as an employee because of her sex.
83. The stated reasons for the Defendant's conduct were not the true reasons, but instead were a pretext to hide the Defendant's discriminatory animus towards Ms. Jackson based on her sex.
84. Plaintiff has been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, and loss of wages and benefits, as the direct and proximate result of respondent's violation of her civil rights as alleged herein. Plaintiff is reasonably certain to continue to suffer these damages in the future. Plaintiff is entitled to rights and remedies at law provided by Title VII including actual damages, compensatory damages, punitive damages, and attorney's fees.

**C.    Age Discrimination, Age Discrimination in Employment Act**

85. Plaintiff re-alleges paragraphs 1 through 84 the same as if fully rewritten herein.
86. Plaintiff is over the age of 40 and the action of the Defendant as stated herein have resulted in a violation of the ADEA.
87. Throughout the entirety of Plaintiff's employment with Defendant, Plaintiff has performed to Defendant's reasonable satisfaction at all times material to this complaint, as evidenced by, without limitation, Plaintiff's longevity of employment and increases in pay.
88. Plaintiff was at all times and is still qualified for her position with the Defendant.
89. Defendant has discriminated against Plaintiff on this basis of her age by holding her to a higher standard in the terms and conditions of her employment than her similarly situated younger coworkers. Plaintiff also discriminated against Plaintiff based on Plaintiff's age when Defendant lowered her wages during her employment.
90. Defendant has created a discriminatory work environment for Plaintiff resulting in a deterioration of the terms and conditions of her employment as compared to her younger coworkers.
91. Defendant has further disciplined Plaintiff in a manner not afforded to her similarly situated younger coworkers.
92. Defendant terminated Plaintiff's employment for the cited reasons of gross misconduct – integrity issues.
93. In contrast to Defendant's assertion, Plaintiff did engage in any misconduct or gross misconduct. Further, Defendant did not terminate the employment of Plaintiff's similarly situated younger coworkers for similar or worse reasons.
94. On information and belief, following the termination of Plaintiff's employment, Defendant assigned Plaintiff's responsibilities to a younger employee.
95. Any reasons proffered by Defendant for terminating Plaintiff's employment are partly pretext for discriminating against Plaintiff on the basis of her age.
96. These acts and omissions of Defendant constitute unlawful and willful discrimination against Plaintiff on the basis of her age, in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.A. §§ 621 et seq.
97. Plaintiff's age was a contributing factor in the decision by Defendant to discipline and terminate her.
98. The discipline of Plaintiff and termination of the employment of the Plaintiff by Defendant was in reckless disregard of the requirements of the ADEA.
99. Defendant's termination of the employment of the Plaintiff among other illegal criteria was based on age and in violation of the ADEA and said violation was willful within the meaning of the ADEA.
100. Plaintiff has been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, and loss of wages and benefits, as the direct and proximate result of Defendant's violation of her civil rights as alleged herein. Plaintiff is reasonably certain to continue to suffer these damages in the future. Plaintiff is entitle do the rights and remedies at law provided by the ADEA 29 U.S.C. § 216(b) including actual damages, compensatory damages, liquidated damages, and attorney's fees.

D. **Unlawful Retaliation Title VII**

101.    Plaintiff re-alleges paragraphs 1 through 100 as if they were re-written herein.

102.    Defendants committed unlawful employment practices when they retaliated against Plaintiff for her efforts to oppose practices reasonably believed to be prohibited by Title VII, in violation of Title VII, 42 U.S.C. § 2000e-3(a)

103.    Plaintiff has been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, and loss of wages and benefits, as the direct and proximate result of Defendant's violation of her civil rights as alleged herein. Plaintiff is reasonably certain to continue to suffer these damages in the future. Plaintiff is entitled to the rights and remedies at law provided by Title VI and 42 U.S.C. § 1981a, including actual damages, compensatory damages, punitive damages, and attorney's fees.

E.    **Unlawful Retaliation ADEA**

104.    Plaintiff re-alleges paragraphs 1 through 103 as if they were re-written herein.

105.    Defendant committed unlawful employment practices when it discriminated against Plaintiff for her efforts to oppose age discrimination prohibited by the ADEA, in violation of the ADEA, 29 U.S.C. § 623(d).

106.    Defendant's violation of the ADEA was willful and Plaintiff seeks liquidated damages for each violation under 29 U.S.C. §216(b).

107.    Plaintiff has been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, and loss of wages and benefits, as the direct and proximate result of Defendant's violation of her civil rights as alleged herein. Plaintiff is reasonably certain to continue to suffer these damages in the future. Plaintiff is entitled to rights and remedies at law provided by the ADEA, 29 U.S.C. §216(b) including actual damages, compensatory damages, liquidated damages, and attorney's fees.

F.    **Unlawful Age Discrimination in Ohio**

108.    Plaintiff re-alleges paragraphs 1 through 107 as if they were re-written herein.

109.    The Defendant's conduct as alleged above constitutes discrimination based on Age in violation of Title 41 of the Ohio Revised Code §4112.14. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus.

110.    Plaintiff was at all times and is still qualified for her position with the Defendant.

111.    Plaintiff has been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, and loss of wages and benefits, as the direct and proximate result of Defendant's violation of her civil rights as alleged herein. Plaintiff is entitled to the rights and remedies at law provided by the Ohio Revised Code, including actual damages, compensatory damages, treble damages, punitive damages, a civil penalty and attorney's fees.

G.    **Termination as Breach of Employee Manual/Employment Contract**

112.    Plaintiff re-alleges paragraphs 1 through 111 as if they were re-written herein.

113. Wal-Mart has an employee manual. When Plaintiff was hired, Plaintiff was given a copy of the employment manual.
114. The terms of the employee manual, provide for a hierarchy of types of discipline for unsatisfactory performance, starting with verbal warnings and ending in dismissal. Defendant's procedure for discipline which was not followed in this case.
115. The personnel policies and procedures of Wal-Mart as evidenced by the terms in the employee manual create an employment contract with Wal-Mart's employees such that they are not dismissed except as a disciplinary measure for poor performance according to the terms of the manual.
116. Wal-Mart failed to follow their policy and procedure listed in the employee manual and thus are in breach of contract.

## IV. Jury Trial Demanded

117. Plaintiff re-alleges paragraphs 1 through 116 as if they were re-written herein.
118. Plaintiff demands a jury trial on all issues and claims triable by jury.

## V. Damages

### A. Economic Damages

119. Plaintiff re-alleges paragraphs 1 through 118 as if they were re-written herein.
120. The compensation of the Plaintiff during the last full year of her employment, based upon her years of age and years in the employment of Defendant, receiving an amount to approximately $37,000 a year in wages. In addition, the Plaintiff received benefits.
121. In addition to the loss of benefits as specified above, Plaintiff will incur additional economic losses and loss of benefits including but not limited to future fringe benefits that Defendant provides for its employees.

### B. Legal Fees

122. Plaintiff re-alleges paragraphs 1 through 121 as if they were re-written herein. Plaintiff has incurred legal fees and will continue to incur legal fees as the result of her wrongful discharge and retaliation for exercising her rights under Federal and State law and is entitled to reasonable attorney fees. Plaintiff is also entitled to court cost incurred as a result of this action.

## Prayer for Relief

WHEREFORE, Plaintiff requests judgment against the Defendant and requests that this court:

1. Issue an order enjoining the Defendant from engaging in discriminatory conduct.
2. Grant a permanent injunction enjoining Defendant, its owners, officers, management personnel, employees, agents, successors, and assigns; enjoining Defendant and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the

    basis of age, race, nationality, or color and/or order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities to all individuals regardless of age, race, nationality, or color, and which eradicate the effects of past and present unlawful employment practices.
3. Order Defendants to make whole Plaintiff by providing her with appropriate earnings, lost benefits, and insurance premiums, with prejudgment interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, reinstatement of Plaintiff to her previous job position.
4. Order Defendants to make whole Plaintiff by providing compensation for pecuniary losses, including, but not limited to, costs to be incurred for health and life insurance premiums and costs of seeking employment, in amounts to be determined at trial.
5. Issue an order requiring the Defendant to reinstate Plaintiff as a full-time employee in her previous position.
6. Grant Plaintiff an award of compensatory damages consisting of back wages, future wages, and other benefits for which she would have been entitled had he been continuously employed in her position as a full-time employee with Defendant for at least an additional period of twenty years.
7. Grant Plaintiff an award of damages in excess of $25,000 for the loss of retirement benefits through her employment with Defendant and penalties, forfeitures and other costs of premature liquidation of Plaintiff's retirement benefits.
8. Grant Plaintiff an award of reasonable attorney fees incurred by Plaintiff.
9. Grant Plaintiff an award of court costs incurred by Plaintiff.
10. Grant Plaintiff an award of damages for mental anguish according to proof in excess of $25,000.
11. Grant Plaintiff an award of additional compensatory damages in excess of $25,000.
12. Grant Plaintiff an award of punitive damages in excess of $25,000.
13. Issue an order requiring Defendant to comply with Section 501 of the rehabilitation act of 973 (29 USCA section 791) to take affirmative action to ensure that Plaintiff has equal access to employment opportunities and promotion with Defendant.
14. Determine that Plaintiff is and at all relevant times was qualified to fill her position with Defendant and that the Defendant has discriminated against the Plaintiff on the basis of her age, race, nationality, and/or color.
15. Grant judgment in favor of Plaintiff for the loss of her benefits, including but not limited to retirement, health insurance, life insurance, loss of sick pay, loss of vacation pay, loss of overtime, and other benefits.
16. Award such other legal and equitable relief as justice requires.
17. Provide for such other and further relief as the court may deem just and proper.

Respectfully submitted,

*/s/ James A. Whitaker*
James A. Whitaker (0000992)
Attorney for Plaintiff
226 Reading Road
Mason, Ohio 45040
(513) 398-1910
Fax (513) 398-0181
jim@whitakerattorneys.com

Respectfully submitted,

*/s/ Matthew J. Dickman*
Matthew J. Dickman (0095654)
Attorney for Plaintiff
226 Reading Road
Mason, Ohio 45040
(513) 398-1910
Fax (513) 398-0181
matthew@whitakerattorneys.com

**Jury Demand**

Plaintiff demands a trial by jury of the maximum number of jurors as provided by law.

Respectfully submitted,

*/s/ James A. Whitaker*
James A. Whitaker (0000992)
Attorney for Plaintiff
226 Reading Road
Mason, Ohio 45040
(513) 398-1910
Fax (513) 398-0181
jim@whitakerattorneys.com

Respectfully submitted,

*/s/ Matthew J. Dickman*
Matthew J. Dickman (0095654)
Attorney for Plaintiff
226 Reading Road
Mason, Ohio 45040
(513) 398-1910
Fax (513) 398-0181
matthew@whitakerattorneys.com

### Notice of lawsuit and request to waive service of summons

Plaintiffs have contemporaneously with the filing of this complaint served upon the Defendants notice of lawsuit and request to waive service of summons along with a waiver of service of summons.

Respectfully submitted,

James A. Whitaker (0000992)
Attorney for Plaintiff
226 Reading Road
Mason, Ohio 45040
(513) 398-1910
Fax (513) 398-0181
jim@whitakerattorneys.com